FILED
N PLEAS COURT
MONT CO OH

18 PM 4

THIA K. MCGEE
RK OF COURTS

IN THE COURT OF COMMON PLEAS
BELMONT COUNTY, OHIO

MURRAY ENERGY HOLDINGS COMPANY )
and MURRAY ENERGY CORPORATION, )
                                                              )
        PLAINTIFFS,                       )
                                                             )
            v.                                         )
                                                             )
BLOOMBERG L.P.                      )
c/o Corporation Service Company  )
50 West Broad Street, Suite 1800   )
Columbus, Ohio 43215,              )
                                                         )
        DEFENDANT.                     )

Case No. 15 CV 298

Hon. _____

**(Jury Demand Endorsed Hereon)**

## COMPLAINT

Plaintiffs MURRAY ENERGY HOLDINGS COMPANY and MURRAY ENERGY CORPORATION (collectively, "Plaintiffs"), by their undersigned counsel, file this Complaint against Defendant Bloomberg L.P., and state as follows:

### PARTIES

1.      Plaintiff Murray Energy Holdings Company is a privately-held Delaware corporation with its principal place of business in St. Clairsville, Ohio.

2.      Plaintiff Murray Energy Corporation ("Murray Energy") is an Ohio corporation with its principal place of business in St. Clairsville, Ohio.

3.      Murray Energy is a privately-held bituminous coal company.

4.      Defendant Bloomberg L.P. ("Bloomberg") is a Delaware limited partnership with a principal place of business in New York, which is registered in the State of Ohio as a foreign business entity.

5.      Bloomberg is a privately-held financial software, data and media company whose website provides business and financial information.

## JURISDICTION AND VENUE

6. The Court possesses original jurisdiction over this civil action under R.C. 2305.01 in that the amount in controversy exceeds $15,000.

7. Venue is proper in this Court under Rule 3(B) of the Ohio Rules of Civil Procedure because Plaintiffs have their principal place of business in Belmont County, and the subject of this Complaint arose from Bloomberg causing tortious injury in this state.

## FACTUAL ALLEGATIONS

8. On August 14, 2015, Murray Energy uploaded a private and confidential investor package (the "Lender PowerPoint") to a secure Intralinks data site in preparation for a private and confidential teleconference with its public debt holders later that day (the "Lender Call" and, together with the Lender PowerPoint, the "Lender Presentation"). Each page of the Lender PowerPoint was clearly designated as "Confidential," as the Lender PowerPoint contained a large amount of Plaintiffs' highly confidential financial and business information, including, without limitation, Plaintiffs' actual and projected adjusted EBITDA, capex, production, sales volume, cost of sales, price realizations, liquidity and/or cash reserves (the "Trade Secret Information").

9. Every person with access to the Intralinks data site to which the Lender PowerPoint was uploaded was required to sign a binding confidentiality agreement (the "Confidentiality Agreement"). A true and correct copy of the Confidentiality Agreement is attached hereto as **Exhibit A**.

10. The Confidentiality Agreement was clear: each and every person who accessed the Intralinks data site contractually agreed not to disclose the Trade Secret Information to any other person as a condition of such access. Only those persons who signed the Confidentiality

Agreement were permitted to access the Lender PowerPoint and attend the Lender Call.

11. The Trade Secret Information was not made available to anyone (outside Murray Energy) at any time, except for those who received the Lender PowerPoint for purposes of the Lender Call and were parties to the Confidentiality Agreement.

12. Murray Energy held the private and confidential Lender Call from approximately 10:00 a.m. until approximately 11:45 a.m. on August 14, 2015.

13. Shortly after the Lender Call concluded on August 14, 2015, Murray Energy was contacted via email by a Bloomberg reporter seeking comment for a Bloomberg publication surrounding the Trade Secret Information contained in the Lender PowerPoint and discussed in the Lender Call.

14. Upon information and belief, Bloomberg knowingly and willingly obtained the Trade Secret Information from or through sources given access to the Lender Presentation from Murray Energy, who were bound by, and breached, the Confidentiality Agreement. Plaintiffs are unaware of the identity of said sources.

15. Murray Energy immediately replied to Bloomberg by email, stating that it objected to any publication of the Trade Secret Information, expressly cautioning that the Trade Secret Information was subject to the Confidentiality Agreement and protected from disclosure under Ohio law, making clear that Bloomberg could only have secured the Trade Secret Information as a result of a willful breach of the Confidentiality Agreement, and that any publication of the Trade Secret Information would cause Plaintiffs significant damage (the "Objection Email"). A true and correct copy of the Objection E-Mail is attached hereto as **Exhibit B**.

16. Despite Murray Energy's objections, Bloomberg published the Trade Secret

Information, stating that it came from "two people with knowledge of the matter" while quoting a Murray Energy representative as "saying that the company's 'financial information is strictly confidential.'" A true and correct copy of the published material is attached hereto as **Exhibit C**.

17. Plaintiffs have been severely damaged both by Bloomberg's conspiracy to breach the Confidentiality Agreement which enabled Bloomberg to acquire the Trade Secret Information and by Bloomberg's subsequent improper publication of the confidential and non-public Trade Secret Information.

### COUNT I – MISAPPROPRIATION OF TRADE SECRET UNDER OHIO UNIFORM TRADE SECRETS ACT (R.C. 1333.61–69)

18. Plaintiffs incorporate and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

19. The Ohio Uniform Trade Secrets Act, R.C. 1333.61–69 ("OUTSA"), establishes a cause of action for the misappropriation of trade secrets. A "trade secret" includes any business information, business plans, financial information or other trade secret information that: (i) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

20. The Trade Secret Information is comprised of trade secrets belonging to Plaintiffs, which are privately-held companies. Specifically, the Trade Secret Information includes certain confidential and proprietary business information, business plans, financial information and trade secrets regarding Plaintiffs, including, without limitation, their actual and projected adjusted EBITDA, capex, production, sales volume, cost of sales, price realizations, liquidity and/or cash reserves.

21. Furthermore, upon information and belief, Bloomberg acquired additional confidential financial information and other trade secrets relating to Plaintiffs which were contained in the Lender Presentation.

22. The Trade Secret Information derives independent economic value, both actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Specifically, Plaintiffs obtained actual and potential economic value by maintaining the confidentiality of the Trade Secret Information because it provided a competitive and strategic advantage in Plaintiffs' interactions with competitors, customers, vendors, and potential and/or current creditors, lenders and investors. This actual and potential economic value was not limited to the value of Plaintiffs' reputation.

23. Plaintiffs also obtained actual and potential economic value by preventing the disclosure of the Trade Secret Information to competitors who could gain a competitive advantage from its use.

24. Upon information and belief, Bloomberg has obtained and will continue to obtain economic value from its misappropriation of the Trade Secret Information because: (i) the Trade Secret Information provides a competitive advantage to Bloomberg in its researching and reporting on the earnings performance of privately-held companies that have issued debt to investors, including Plaintiffs; (ii) Bloomberg receives monetary benefit through publishing the Trade Secret Information; and (iii) the Trade Secret Information assists Bloomberg in selling more subscriptions to, or advertisements on or within, its various publications and/or its webpage and otherwise generating interest in them.

25. Further, as demonstrated by Bloomberg's decision to misappropriate and publish

the Trade Secret Information, other persons, including Bloomberg's readers and subscribers, have an interest in the Trade Secret Information and can obtain economic value from its use.

26. The Trade Secret Information was the subject of efforts that were reasonable under the circumstances to maintain its secrecy, including, but not limited to, efforts by Plaintiffs to restrict access to the Trade Secret Information by disclosing it only to individuals who owed a contractual and/or fiduciary duty to Plaintiffs not to disclose the Trade Secret Information to any other person. All persons to whom Plaintiffs disclosed the Trade Secret Information were under a fiduciary and/or contractual duty to maintain its secrecy and confidentiality.

27. Bloomberg knew or had reason to know that its knowledge of the Trade Secret Information was derived from or through sources that had a contractual and/or fiduciary duty not to disclose the Trade Secret Information. Bloomberg also knew or had reason to know that the Trade Secret Information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

28. Bloomberg did not have Plaintiffs' consent to acquire, publish, use or otherwise disclose the Trade Secret Information.

29. Bloomberg misappropriated the Trade Secret Information by acquiring it through improper means and by publishing it.

30. Bloomberg benefited from, and has been unjustly enriched by, this misappropriation and publication of the Trade Secret Information.

31. By misappropriating and publishing the Trade Secret Information with knowledge that it is a confidential trade secret under Ohio law and is protected by the Confidentiality Agreement, Bloomberg acted with an improper motive, utilized methods that exceeded routine newsgathering techniques and (without conceding that Bloomberg is in the business of

"newsgathering" or "journalism") violated the ethics and standards of journalism.

32. The Trade Secret Information does not implicate matters of public concern or public interest, as evidenced by, among other things, the facts that: (i) Plaintiffs are privately-held companies; (ii) the Trade Secret Information is a confidential trade secret under Ohio law and is protected by the Confidentiality Agreement; (iii) the Trade Secret Information is not of any interest or value to the general public, but only to Plaintiffs' limited number of competitors and/or potential future lenders or investors; and (iv) the Lender Presentation was intended for a very small group of corporate entities and lenders with a direct interest in the performance of Plaintiffs.

33. As a result of Bloomberg's misappropriation of the Trade Secret Information, Plaintiffs are entitled to recover damages for: (i) their actual losses caused by the misappropriation; and (ii) the unjust enrichment enjoyed by Bloomberg as a result of the misappropriation, which is not included in Plaintiffs' actual losses. Alternatively, Plaintiffs are entitled to recover damages measured by imposition of liability for a reasonable royalty that is equitable under the circumstances considering the loss to Plaintiffs and the benefit to Bloomberg.

34. Bloomberg misappropriated and repeatedly published the Trade Secret Information with knowledge that it was a trade secret and with knowledge that such disclosure would cause significant injury and damage to Plaintiffs. Therefore, Bloomberg's misappropriation of the Trade Secret Information was willful and malicious, and Plaintiffs are also entitled to attorneys' fees and punitive or exemplary damages as a result.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACT

35. Plaintiffs incorporate and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

36. The Confidentiality Agreement was and remains a valid and enforceable contract existing between Plaintiffs and Bloomberg's sources, which specifically and expressly required Bloomberg's sources not to disclose the Trade Secret Information to any third party.

37. Bloomberg acquired and published the Trade Secret Information with knowledge or reason to know that the Trade Secret Information was derived from or through sources who were contractually prohibited from disclosing the Trade Secret Information pursuant to the terms of the Confidentiality Agreement. In fact, Murray Energy explicitly told Bloomberg before Bloomberg published the Trade Secret Information that the Confidentiality Agreement existed, and that the Trade Secret Information was protected from disclosure under the Confidentiality Agreement and Ohio law. Bloomberg even acknowledged the same in its publication, further evidencing that it was well-aware of the Confidentiality Agreement and the fact that its sources were acting in breach thereof.

38. Upon information and belief, Bloomberg intentionally and unjustifiably induced the breaches of the Confidentiality Agreement by its sources and/or induced its sources to disclose the Trade Secret Information with knowledge that such disclosure would violate the terms of the Confidentiality Agreement. Further, Bloomberg published the Trade Secret Information with knowledge that such disclosure would cause breaches of the Confidentiality Agreement by its sources.

39. Bloomberg's inducement and/or procurement of the breaches of the Confidentiality Agreement by its sources was not justified because: (i) Bloomberg's conduct was improper and does not fall within any recognized privilege; (ii) Bloomberg misappropriated the Trade Secret Information with knowledge that it is comprised of confidential trade secrets and is otherwise protected by the Confidentiality Agreement; (iii) Bloomberg acted with an

improper motive, utilized methods that exceeded routine newsgathering techniques and (without conceding that Bloomberg is in the business of "newsgathering" or "journalism") violated journalism ethics and standards; (iv) and any interest Bloomberg may have had in publishing the Trade Secret Information does not outweigh the countervailing interests of Plaintiffs in protecting their confidential trade secrets.

40. Plaintiffs have suffered and will continue to suffer damages as a direct result of Bloomberg's improper conduct in inducing and/or procuring breaches of the Confidentiality Agreement.

41. Bloomberg's improper and unjustifiable actions in procuring breaches of the Confidentiality Agreement by its sources and/or inducing its sources to disclose the Trade Secret Information with knowledge that such disclosure would violate the terms of the Confidentiality Agreement constitute a separate, distinct and independent factual basis apart from Bloomberg's misappropriation and publication of the Trade Secret Information.

## COUNT III – CIVIL CONSPIRACY

42. Plaintiffs incorporate and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

43. Upon information and belief, Bloomberg knowingly, voluntarily and maliciously combined and conspired with one or more of its sources to enable the breaches of the Confidentiality Agreement for the unlawful purpose of acquiring the Trade Secret Information for publication in violation of Ohio law.

44. Bloomberg committed the affirmative unlawful acts of misappropriating the Trade Secret Information and then publishing the Trade Secret Information gleaned from the breaches of the Confidentiality Agreement with knowledge that such disclosure would continue

to cause further breaches of the Confidentiality Agreement by its sources, violate Ohio law and severely damage Plaintiffs as a result.

45. Plaintiffs have suffered and will continue to suffer damages as a result of Bloomberg's improper conduct in conspiring to breach the Confidentiality Agreement and misappropriate Plaintiffs' Trade Secret Information for publication.

### COUNT IV – DECLARATORY JUDGMENT

46. Plaintiffs incorporate and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

47. Bloomberg has already shown its willingness to unlawfully publish the confidential and non-public financial information of Plaintiffs, as evidenced by Bloomberg's wrongful publication of the Trade Secret Information at issue herein.

48. As a result, Plaintiffs request a declaratory judgment, pursuant to the Ohio Declaratory Judgment Act, R.C. 2727.02 *et seq.*, that publication of any other information from the Lender Presentation by Bloomberg will constitute an additional violation of OUTSA and will entitle Plaintiffs to further relief as provided by law.

**WHEREFORE**, Plaintiffs request the following relief:

a. Judgment in favor of Plaintiffs and against Bloomberg, including an award of damages sufficient to compensate Plaintiffs for: (i) their actual losses caused by Bloomberg's misappropriation and publication of the Trade Secret Information and procurement of the breaches of the Confidentiality Agreement by Bloomberg's sources; (ii) the unjust enrichment enjoyed by Bloomberg from the misappropriation and publication which is not included in Plaintiffs' actual losses; and (iii) damages measured by imposition of liability for a reasonable royalty that is equitable under the circumstances considering the loss to Plaintiffs and the benefit to Bloomberg;

b. Punitive or exemplary damages under Count I or as otherwise allowed by law;

c. Attorneys' fees under Count I or as otherwise allowed by law;

d. Declaratory judgment that any other publication or disclosure from the Lender Presentation by Bloomberg will constitute an additional violation of OUTSA, and will entitle Plaintiffs to further relief as provided by law;

e. Interest as allowed by law;

f. All costs as allowed by law; and

g. Such other and further relief this Court and/or a jury deem just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS ACTION.**

Respectfully submitted this 18th day of August, 2015.

> Leonard J. Marsico (0070741)
> Branden P. Moore (0092716)
> **McGuireWoods LLP**
> 625 Liberty Avenue, 23rd Floor
> Pittsburgh, Pennsylvania 15222
> Telephone: (412) 667-6000
> Facsimile: (412) 667-6050
> lmarsico@mcguirewoods.com
> bmoore@mcguirewoods.com
>
> *Attorneys for Plaintiffs*

*Of Counsel*

Matthew D. Monsour
Pennsylvania Bar No. 208648
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, Pennsylvania 15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050
mmonsour@mcguirewoods.com

STATE OF OHIO
BELMONT COUNTY
CYNTHIA K. MCGEE, CLERK OF COURTS, DO HEREBY CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN THIS OFFICE.

CYNTHIA K. MCGEE, CLERK OF COURTS
BY_____DEPUTY

-11-

# Murray Energy Corporation Certification Form

## A. BASIC IDENTIFICATION DATA

Name of Bondholder / Prospective Investor / Broker-Dealer / Securities Analyst

| Address (Number and Street, City, State, Zip Code) | Telephone Number (Including Area Code) |
|---|---|
| | |

Brief Description of Business

Email Address:

Type of Business Organization
- ☐ corporation
- ☐ business trust
- ☐ limited partnership, already formed
- ☐ other (please specify):

## B. INFORMATION FOR DEBTHOLDERS / PROSPECTIVE INVESTORS

1. Broker / DTC Participant Name ..................

2. Broker / DTC Participant Number ..................

3. Current Debtholders – Amount of Current Investment

   A.) Senior Secured Notes $ _____   B.) Senior Secured Term Loan Facility $ _____   C.) Revolving Credit Facility $ _____

4. Prospective Investors - Areas of Interest (check all that apply)

   ☐ Senior Secured Notes   ☐ Senior Secured Term Loan Facility   ☐ Revolving Credit Facility

5. Other Relevant Information ..................

## C. INFORMATION FOR BROKER - DEALERS / SECURITIES ANALYSTS

Name of Associated Broker or Dealer

Business or Residence Address (Number and Street, City, State, Zip Code)

Reason for requesting Murray Energy information:

## CONFIDENTIALITY AGREEMENT AND SIGNATURE

I am being granted access to certain confidential financial information ("Confidential Information") of Murray Energy Corporation ("MEC"). I understand that the Confidential Information is a valuable, special and unique asset of MEC which provides MEC with a significant competitive advantage, and needs to be protected from improper disclosure. In consideration for MEC allowing me access to its Confidential Information, I agree that my access to the Confidential Information is subject to the following conditions:

The Confidential Information is confidential and I agree that I will use such information solely for the purpose of administrating and evaluating my employer's investment or potential investment in MEC. I agree to keep such Confidential Information strictly confidential, and not disclose such information to any other person or third party in any manner, except to the extent that disclosure of such information: 1.) has been previously consented to in writing by MEC; 2.) is required by applicable law, regulatory or legal process; or 3.) is made to the directors, officers, employees, affiliates, financing parties or advisors of my employer and to any representatives of such advisors (collectively "Agents"), solely for the purpose of administrating and evaluating investments in MEC. I will maintain the information in confidence and will not disclose any of the Confidential Information to others except as expressly permitted by this section. In the event that I am required to disclose any Confidential Information to my employer or its Agents, I will not disclose any Confidential Information until my employer, or its Agents, acknowledge that the Confidential Information is to be kept confidential and has agreed in writing to maintain its confidentiality. This Agreement shall be governed by the laws of the State of Illinois without regard to its conflict of laws doctrine.

The person named above has read this notification and knows the contents to be true and has duly caused this notice to be signed on its behalf by the undersigned duly authorized person.

| Name of Applicable Entity (Print or Type) | Signature | Date |
|---|---|---|
| | | |
| Name of Signer (Print or Type) | Title of Signer (Print or Type) | |
| | | |

EXHIBIT A

**From:** Broadbent, Gary
**Sent:** Friday, August 14, 2015 1:07 PM
**To:** 'Sridhar Natarajan' <snatarajan15@bloomberg.net>
**Subject:** RE: Fwd:for Bloomberg News: Murray bonds

Mr. Natarajan,

Murray Energy Corporation ("Murray Energy") objects, in the strongest terms, to the publication of its Confidential Information contained in your e-mails to me today.

Bloomberg has secured such information in willful breach of valid, binding confidentiality agreements between Murray Energy and Bloomberg's sources.

Murray Energy, once again, urges Bloomberg to not publish Murray Energy's Confidential Information and advises Bloomberg of Murray Energy's intention to use all lawful means to recover from Bloomberg the full measure of the damage it is causing to Murray Energy and any exemplary damages that may be available under law.

Sicnerely,

Gary M. Broadbent
*Assistant General Counsel
and Media Director*
Murray Energy Corporation
46226 National Road
St. Clairsville, Ohio 43950

Office:  740-338-3100
Direct:  740-338-3384
Cell:    740-827-7165
Fax:     740-338-3405

gbroadbent@coalsource.com
www.murrayenergycorp.com



EXHIBIT B

1

**BloombergBusiness**

# Murray Energy's Bonds Collapse After Coal Miner Said to Lower Outlook

Sridhar Natarajan Laura J Keller
August 14, 2015

Murray Energy Corp., which just completed its first purchase of overseas assets, is struggling to convince creditors it can withstand the coal slump at home in the U.S.

A $1.3 billion bond issue sold by the miner in April dropped 10.8 cents to 47 cents on the dollar, according to Trace, the bond-price reporting system of the Financial Industry Regulatory Authority. In a presentation to bondholders on Friday, the closely held company lowered its earnings outlook for 2015 to a range of $600 million to $660 million from a projection last quarter of $648 million to $790 million, according to two people with knowledge of the matter.

The miner founded by Robert E. Murray, who has vowed to be the "last man standing" in U.S. coal, is dealing with the sector's worst downturn in decades as it faces pressure from cheap natural gas and stricter environmental regulations. The bonds were sold to finance Murray's acquisition of a stake in Foresight Energy LP, which was announced in March.

Murray said this week it had purchased assets in Colombia from Goldman Sachs Group Inc.

Gary Broadbent, a spokesman for Murray Energy, declined to comment on the earnings or the decline in its bonds, saying that the company's "financial information is strictly confidential."

Murray Energy had $181 million of cash on hand at the end of June, the people said. The company also projected earnings before interest, taxes, depreciation and amortization of $625 million to $675 million for 2016, lower than what investors expected, one of the people said.

The company's second-lien bonds mature in 2021 and pay a coupon of 11.25 percent. They were sold at 96.9 cents on the dollar to yield 12 percent. In four months, the securities have lost more than half their market value and now yield 32 percent.

***

EXHIBIT C

**CERTIFIED MAIL**®

Return in 5 Days to:
**Cynthia K. McGee**
Clerk of Courts, Belmont County
Courthouse
101 W. Main Street
St. Clairsville, OH 43950



9414 7266 9904 2032 6898 21



US POSTAGE
$07.67⁰
FIRST CLASS
Mailed From 43950
08/21/2015
031A 0003191288

**RETURN RECEIPT REQUESTED**
**PLEASE FORWARD**

15 CV 0298
7160 3901 9844 2782 941 7

Bloomberg LP
% Corporation Service Company
50 West Broad Street Suite 1800
Columbus, OH 43215

*Legal Document*

43215$5910 C004