IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Murray Energy Holdings
Company, et al.,                    :

        Plaintiffs,                 :

    v.                              :       Case No.  2:15-cv-02845

Bloomberg L.P.,                     :       JUDGE ALGENON L. MARBLEY
                                            Magistrate Judge Kemp
            Defendant.              :


<u>REPORT AND RECOMMENDATION</u>

On August 18, 2015, Plaintiffs Murray Energy Holdings
Company and Murray Energy Corporation filed a complaint in the
Belmont County, Ohio, Court of Common Pleas.  It named only
Bloomberg L.P. as a defendant, and asserted four state-law claims
for relief, all arising out of Bloomberg's publication of what
Plaintiffs claims to be trade secret information extracted from a
power point presentation which Murray Energy Corporation had made
to its public debt holders.

Although Murray Energy Corporation, one of the two
plaintiffs, is an Ohio corporation, Murray Energy Holdings
Company is incorporated in Delaware.  Bloomberg is also a
Delaware corporation.  Nonetheless, Bloomberg removed the case to
this Court on ground of diversity of citizenship jurisdiction.
It states in its notice of removal (Doc. 1) that, under the
doctrine of fraudulent joinder, the Court should, for purposes of
determining jurisdiction, disregard the presence of the Holdings
Company.

On October 21, 2015, Plaintiffs filed a motion to remand
this case to the Court of Common Pleas of Belmont County, Ohio.
Bloomberg filed a response on November 16, 2015 and Plaintiffs
filed a reply on November 30, 2015.  For the following reasons,

the court will recommend that the motion to remand be granted.

I.  The Facts

The following statement of facts is taken from the complaint.  It goes without saying that Bloomberg is not necessarily in agreement with these facts, but they form the backdrop for the Court's consideration of the jurisdictional issue raised by the motion to remand.

Murray Energy Holdings Company ("the Holdings Company") is a Delaware corporation with its principal place of business in Ohio.  Murray Energy Corporation ("the Energy Corporation") is an Ohio corporation also headquartered in Ohio.  The Energy Corporation is a privately-held bituminous coal producer.  Bloomberg is a Delaware limited partnership with a principal place of business in New York.

On August 14, 2015 the Energy Corporation gave a presentation to its public debt holders.  In connection with that presentation, the Energy Corporation required each person to whom it made the presentation to sign a confidentiality agreement before accessing a secure internet site where certain financial information about the Energy Corporation was posted.  On that website there was information about "Plaintiffs' actual and projected EBITDA, capex, production, sales volume, cost of sales, price realizations, liquidity and/or cash reserves."  Complaint, ¶8.

After the presentation, a Bloomberg reporter contacted the Energy Corporation asking it to confirm the accuracy of some of the financial information that appeared in the presentation.  The Energy Corporation immediately objected, by email, to any publication of that information.  Nevertheless, that same day Bloomberg published an article titled "Murray Energy's Bonds Collapse After Coal Miner Said to Lower Outlook."  Complaint, Exhibit C.  The complaint, filed shortly thereafter, alleges that

-2-

by publishing this information, which, according to Plaintiffs, could only have come from someone who signed the confidentiality agreement, Bloomberg violated the Ohio Uniform Trade Secrets Act ("OUTSA"), tortiously interfered with Plaintiffs' contractual relations with its debt holders as reflected in the confidentiality agreement they signed, and engaged in a civil conspiracy.  The complaint also seeks a declaration that any further publication of the information will constitute an additional violation of the OUTSA.

## II. The Motion to Remand

28 U.S.C. §1332(a) permits a federal court to exercise jurisdiction over cases where the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.  Plaintiffs do not dispute that the amount in controversy requirement is satisfied here.  Rather, they argue that complete diversity does not exist because both Bloomberg and the Holding Company are, for purposes of diversity jurisdiction, citizens of Delaware.  The notice of removal presents two distinct issues to be resolved: first, does the fraudulent joinder doctrine apply to plaintiffs (it is typically used as a means to disregard the citizenship of a defendant), and second, was the joinder of the Holdings Company in this case "fraudulent" for purposes of applying that doctrine?  The Court addresses each issue separately.

### A.  Fraudulent Joinder of Plaintiffs

The doctrine of fraudulent joinder (which, despite its name, has little or nothing to do with actual fraud) is typically described this way:  "When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined."  Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C. 176 F.3d

-3-

904, 907 (6th Cir. 1999) (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)). To prove fraudulent joinder, the removing party must show that the plaintiff has not even arguably established a cause of action against the non-diverse defendant under state law. See Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994). However, if there is a colorable basis for predicting that a plaintiff may recover against a non-diverse defendant, that defendant has not been fraudulently joined, there is no diversity of citizenship, and, if the case was begun in state court, it must be remanded. In deciding issues of fraudulent joinder, the Court, consistent with the principle that removal jurisdiction is to be strictly construed, must resolve "all disputed questions of fact and ambiguities in the controlling ... state law in favor of the non-removing party." Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999).

All of these cases deal with defendants who were allegedly fraudulently joined. Bloomberg asserts that the same concept can be applied to a plaintiff whose presence in the case defeats diversity jurisdiction, but who has no arguable claim for recovery. Plaintiffs acknowledge, in their motion to remand, that some courts (including some district courts within this Circuit) have applied this theory to plaintiffs as well as to defendants, but argue that the better view is that the fraudulent joinder doctrine must be confined to defendants. They make three policy arguments in support of this proposition: (1) that since ambiguities should be decided in favor of those seeking remand, and it is ambiguous whether the fraudulent joinder doctrine applies to plaintiffs, it should not be so applied; (2) that questions about the sufficiency of state law claims should be left to state courts; and (3) that considerations of the state-federal jurisdictional dynamic favor limiting the

-4-

application of the doctrine to defendants.

Plaintiffs rely heavily on Myers Indus., Inc. v. Young, 2013 WL 4431250 (N.D. Ohio Aug. 16, 2013). There, the Court noted the existence of conflicting authority on this issue and the absence of any controlling decision from the Court of Appeals, and concluded that because there was a legal ambiguity on the issue, that doubt should be resolved in favor of declining to apply the doctrine. Plaintiffs also cite to other district court decisions which rely on various rationales for declining to apply the doctrine to plaintiffs - for example, that without authorization from the Court of Appeals for that circuit, a district court should not adopt the doctrine, and that to do so would dramatically increase the district court's jurisdiction, see Reeves v. Pfizer, Inc., 880 F. Supp. 2d 926 (S.D. Ill. 2012), or that there is little authority supporting its application to plaintiffs, see Price v. Smith, 842 F.Supp.2d 1111 (E.D. Wisc. 2012). Bloomberg, by contrast, cites to a number of cases which, like Eberspaecher North America, Inc. v. Van-Rob, Inc., 2007 WL 2332470 (E.D. Mich. Aug. 15, 2007), find no principled basis for distinguishing between the fraudulent joinder of non-diverse defendants and the fraudulent joinder of non-diverse plaintiffs. In either situation, those courts reason, a plaintiff should not be permitted to defeat removal jurisdiction simply by adding a non-diverse party to a case when there is no realistic possibility either that the party will be subject to liability or will be able to recover on the claim which has been asserted.

Bloomberg clearly has the better of this argument. There is no reason why a district court cannot apply an established jurisdictional doctrine like fraudulent joinder to circumstances which warrant that action, at least as long as there is no controlling authority which prohibits it from doing so. Further,

the rule that ambiguities in the removal setting should be resolved in favor of remand simply has no application to the question of whether a particular federal legal doctrine applies; it relates to ambiguities concerning the underlying factual issues and the state law applicable to the claims which have been pleaded.  See Coyne, supra.  Otherwise, no court could ever be the first to apply a new legal doctrine to a removal because, at the time the court was considering whether to do so, the use of that doctrine would be "legally ambiguous."  Next, the federal-state-court dynamic has already been addressed in the removal statute; the question here is simply whether a case in which a plaintiff is joined for no arguable reason other than to defeat removal ought to remain in state court if the defendant otherwise has proper grounds for removal.  The answer to that question seems obvious.  Finally, the fraudulent joinder doctrine, even as applied to defendants, assumes that not every question about the sufficiency of state law claims should be resolved by the state courts.  Most should, but in those relatively rare instances where no judge, state or federal, would find even arguable merit in the state law claim presented by or against the non-diverse party, federal judges can and do make that judgment call.

This Court agrees fully with Judge Heyburn's observation in Taco Bell Corp. V. Dairy Farmers of Am., Inc., 727 F. Supp. 2d, 604, 607 (W.D. Ky. 2007) that

> [t]here is no significant difference between fraudulent joinder of plaintiffs and fraudulent joinder of defendants. [footnote omitted].  The primary purpose of fraudulent joinder is to ensure that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties.  See, e.g., Saginaw Housing Comm'n v. Bannum, Inc., 576 F.3d 620, 624 (6th Cir.2009) ("Fraudulent joinder occurs when the non-removing party joins a party against whom there is no colorable cause of action.").  That purpose is fulfilled both where the plaintiff improperly sues non-diverse defendants against whom it has no viable

-6-

claim and where the plaintiff joins additional
non-diverse plaintiffs who have no viable claims.

Consequently, the question of jurisdiction turns on whether the
Holdings Company has asserted a colorable claim against
Bloomberg. If so, removal was improper; if not, the case should
remain here.

        B.   Joinder of the Holdings Company

The focus of this part of the inquiry is necessarily on the
complaint itself. And, of course, the issue is not whether the
Holdings Company has stated a claim for relief which would
survive a motion to dismiss filed under Fed.R.Civ.P. 12(b)(6);
the issue is whether it has asserted one or more claims which
could arguably do so. If that is the case, under the legal
principles cited above, the joinder is not fraudulent and the
state court will have to determine the ultimate sufficiency of
the claims.

The complaint identifies both the Holdings Company and the
Energy Corporation as "Plaintiffs." In ¶8, it alleges that the
Energy Corporation was the entity which uploaded the investor
package to the website for the benefit of its investors.
However, that same paragraph states what was uploaded was the
"Plaintiffs' highly confidential business information ...."
Paragraph 17 states that "Plaintiffs have been severely damaged
... by Bloomberg's conspiracy ... and by Bloomberg's subsequent
improper publication of the confidential information." In ¶20,
the complaint avers that "[t]he Trade Secret Information is
comprised of trade secrets belonging to Plaintiffs, which are
privately held companies." The next paragraph asserts that
Bloomberg also acquired "additional confidential financial
information and other trade secrets relating to Plaintiffs ...."
Paragraph 22 claims that "Plaintiffs" kept the information secret
and that it provided competitive and strategic value in their

-7-

interactions with other business entities and with lenders and investors.  These facts, if true, are enough to support at least some of the claims asserted in the complaint, particularly the misappropriation of trade secrets claim.

Bloomberg does not, in its opposition, argue that the claims asserted in the complaint are, by themselves, so frivolous that no court could even arguably grant relief on them.  Rather, its focus is on the relationship between the Holdings Company and the claims which are pleaded.  Bloomberg argues that the Holdings Company is not a true party and that the general statements attributing ownership of trade secrets to both Plaintiffs cannot overcome the more specific allegations made in the complaint. Those allegations, according to Bloomberg, demonstrate that the allegedly secret information related solely to the economic health of Murray Energy.  Further, it is clear that the disclosure agreement was made between the investors and Murray Energy, involving information that was " a valuable, special, and unique asset of MEC [Murray Energy Corporation...." (Complaint, Exhibit A).  Bloomberg notes that its published article (Complaint, Exhibit C) related only to the Energy Corporation, that Bloomberg was contacted and asked not to publish the information only by a representative of the Energy Corporation, that there are no specific references to the Holdings Company in the exhibits.

In support of its position, Bloomberg cites several cases which, in its view, hold that vague allegations against a particular defendant were assumed improper.  For example, fraudulent joinder was found in Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999) because the pleadings, after identifying the non-diverse defendant as an agent for State Farm Lloyds, "refer to conduct by the 'Defendants' that can in no way be attributed to [the non-diverse party]. Both [Plaintiff's]

-8-

factual allegations and his articulation of his legal claims focus solely upon State Farm Lloyds' conduct in the processing and ultimate denial of his claim." Similarly, in Lyons v. Trott & Trott, 905 F.Supp.2d 768, 772 (E.D. Mich. 2012), the court found claims against the non-diverse defendant (who served as attorney for a mortgage holder) to be untenable because "a plaintiff in a foreclosure action has no independent state law claim against [an attorney] for conduct related to an alleged wrongful foreclosure where [that attorney] is acting solely as the attorney/agent for the lender or loan servicer." See also Salisbury v. Purdue Pharma, L.P., 166 F.Supp.2d 546, 550 (E.D. Ky. 2001)(finding allegations about the sale of Oxycontin made against non-diverse pharmacy defendants to be insufficient where "plaintiff does not allege that any of the proposed representative plaintiffs themselves (or, for that matter, any members of the proposed Rule 23 classes) purchased or were otherwise supplied OxyContin by the defendant pharmacies").

As to the breach of contract claim, Bloomberg may be right. The contract, which is an exhibit to and therefore part of the complaint, does not identify the Holdings Company as a party. There are no allegations in the complaint that invoke some other theory of contractual entitlement, such as a third-party beneficiary claim. There is thus no colorable claim made by the Holdings Company that Bloomberg tortiously interfered with any contractual rights of the Holdings Company.

The trade secret claim, however, is different. The complaint affirmatively alleges that the uploaded information at issue consisted of financial information about both the Energy Corporation and the Holdings Company. It does not describe that information with sufficient specificity to make it clear that only financial information about the Energy Company is at issue here. Paragraph 22 states that Bloomberg may have acquired other

-9-

confidential information about both Plaintiffs as well.  These allegations may ultimately prove to be false (and if they are, there is a remedy in state court to address that, see Ohio R.Civ.P. 11), but this Court must accept their truth for purposes of ruling on the motion to remand.  As pleaded, the complaint says that confidential financial information belonging to both Plaintiffs was uploaded, disclosed, and published.

None of the cases cited by Bloomberg deal with a similar scenario.  They involve situations where a pleading simply fails to describe any action taken by the non-diverse party which could result in liability - for example, in Salisbury, the pharmacy defendants were not alleged to have sold any allegedly defective products to any of the plaintiffs - and the complaint does not (as was the case in Lyons v. Trott & Trott) plead a claim which is not recognized by state law.  In those cases, the Court did not have to look behind the factual allegations of the complaint, because those allegations themselves showed the total absence of a colorable claim.  Here, by contrast, Bloomberg is asking the Court to conclude that certain allegations in the complaint are simply not true.  That is not the Court's role in ruling on a motion to remand.  Certainly, the allegations about the Holdings Company's information could have been more precise, but ambiguities are to be resolved in favor of remand.  For that reason, even though the Court agrees that the fraudulent joinder doctrine can be used to disregard the citizenship of a plaintiff who has not pleaded a colorable claim, it finds the doctrine to be inapplicable to this particular complaint.  Consequently, the motion to remand should be granted.

### III. Attorney's Fees and Costs

Plaintiffs also ask for attorney's fees and costs incurred in connection with their motion to remand. "Absent unusual circumstances, courts may award attorney's fees under §1447(c)

only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Fee shifting is not automatic; otherwise, "defendants might choose to exercise this right only in cases where the right to remove was obvious." Id. at 140.

In a case where the removal is based on fraudulent joinder, a remand does not necessarily mean that the removal was objectively unreasonable. See Kent State Bd. Of Trustees v. Lexington Ins. Co., 512 Fed.Appx 485, 492 (6th Circuit Jan. 22, 2013), citing Gardner v. UICI, 508 F.3d 559, 562 (9th Cir. 2007). That decision recognized that there is a spectrum upon which cases removed under that theory will fall, and that there are cases in the middle range of the spectrum where the removal "must be considered objectively reasonable." This is one of those cases. The joinder of the Holdings Company as a plaintiff seems unusual given the underlying circumstances, and the allegations themselves could be viewed as intentionally ambiguous on the question of exactly what financial or other confidential information belonging to the Holdings Company was actually disclosed and published. A reasonable person could have viewed these facts as indicating a desire to prevent removal, and Bloomberg made a reasonable argument in support of its position. That being so, no attorneys' fees should be awarded.

### IV.  Recommended Decision

For all of these reasons, it is recommended that the Plaintiffs' motion to remand be granted (Doc. 15) and that their request for attorney's fees and costs be denied.

### V.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this

-11-

Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-12-