**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MURRAY ENERGY HOLDINGS** | : | |
| **COMPANY,** *et al.*, | : | |
| | : | **Case No. 2:15-CV-2845** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Kemp** |
| **BLOOMBERG, L.P.,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court for consideration of: (1) Defendant Bloomberg, L.P.'s ("Bloomberg") Objection to the United States Magistrate Judge's **Report and Recommendation** recommending that the Motion to Remand of Plaintiffs Murray Energy Holdings Company ("The Holdings Company") and Murray Energy Corporation ("Murray Energy") be granted; and (2) Defendant Bloomberg's Motion to Dismiss for failure to state a claim upon which relief can be granted. Based on the independent consideration herein, the Court **ADOPTS in part** and **REJECTS in part** the Report and Recommendation (Doc. 23). Plaintiffs' Motion to Remand is **DENIED**. Further, Defendant's Motion to Dismiss (Doc. 17) is **GRANTED**.

## I.    BACKGROUND

### A.  Factual Background

Plaintiff Murray Energy is a privately-held bituminous coal company headquartered in St. Clairsville, Ohio. (Compl., Doc. 3 at ¶¶ 2-3.) Plaintiff Murray Energy Holdings is a privately-held Delaware corporation with its principal place of business in St. Clairsville, Ohio. (*Id.* at ¶ 1.) Defendant Bloomberg, a Delaware limited partnership with a principal place of business in

New York, is a privately-held financial software, data, and media company whose website provides business and financial information.  (*Id.* at ¶¶ 4-5.)

On August 14, 2015, Murray Energy uploaded a private and confidential investor package (the "Lender PowerPoint") to a secure site in preparation for a call with its public debt holders (the "Lender Call" and, together with the Lender PowerPoint, the "Lender Presentation").  (*Id.* at ¶ 8.)  The presentation was designated "confidential" and included Plaintiffs' actual and projected adjusted EBITDA,[1] capital expenditure, production, sales volume, cost of sales, price realizations, liquidity, and cash reserves.  (*Id.*)  Only persons who had signed a confidentiality agreement with Murray Energy were permitted to access the August Lender Power Point.  (*Id.* at ¶ 9.)   The Holdings Company was not a party to the confidentiality agreement.  (*Id.* at Ex. A.)

Shortly after the Lender Call concluded at approximately 11:45 a.m., Murray Energy received an email from a Bloomberg reporter seeking comment for a Bloomberg publication surrounding the financial information contained in the Lender PowerPoint and discussed in the Lender Call.  (*Id.* at ¶ 12-13.)  Murray Energy replied by email, objecting "to the publication of its Confidential Information."  (*Id.* at ¶ 15; Ex. B.)  Bloomberg nevertheless published the information.  (*Id.* at ¶ 16.)

### B.  Procedural History

Plaintiffs filed a complaint against Defendant in the Belmont County Court of Common Pleas on August 18, 2015.  (Doc. 3.)  Plaintiffs brought claims under Ohio law for: (1) misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act ("OUTSA"); (2) tortious interference with contract; (3) civil conspiracy; and (4) a declaratory judgment that

---

[1] EBITDA, which stands for "earnings before interest, taxes, depreciation, and amortization," is a commonly reported measure of a company's pre-tax earnings calculated on a cash basis.

Defendant's publication of any other information from the Lender Presentation will constitute an additional violation of the OUTSA.  (Doc. 3 at ¶¶ 18-48.)  Plaintiffs request compensatory and punitive damages and attorneys' fees.  (*Id.* at 10-11.)

On September 18, 2015, Defendant removed the action to this Court.  (Doc. 1.)   On October 21, 2015, Plaintiffs filed a motion to remand the case to the Belmont County Court of Common Pleas, asserting that the Holdings Company and Bloomberg are not of diverse citizenship, as both are Delaware corporations.  (Doc. 15.)  The Magistrate Judge issued a Report and Recommendation on April 1, 2016, recommending that Plaintiffs' motion be granted and the case be remanded to state court.  (Doc. 23.)  Defendant timely objected and Plaintiffs responded. (Docs. 24-25.)

On October 26, 2015, Defendant filed a motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 17.)

## II.     MOTION TO REMAND

### A.  Standard of Review

When a party objects to a magistrate judge's report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).  A motion to remand is a dispositive motion.  *See Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## B.  Merits

Under 28 U.S.C. 1332, the federal courts have jurisdiction over cases where the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.  Plaintiffs argue that the parties in this case lack complete diversity because both Bloomberg and the Holdings Company are citizens of Delaware.  Defendant contends that the doctrine of fraudulent joinder applies here because Murray Energy has fraudulently joined the Holdings Company as a plaintiff in order to destroy diversity jurisdiction.  The Court will first consider whether the doctrine of fraudulent joinder may apply to plaintiffs (as opposed to only defendants, as Plaintiffs argue here) and then, if so, whether the Holdings Company was fraudulently joined.

The Sixth Circuit has held that "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999).  A party is fraudulently joined if it is "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law."  *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)).  In other words, removal is proper if there is any "reasonable basis for predicting that [the plaintiff] could prevail."  *Id.* (quoting Teddler v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir. 1979).  The removing party bears the burden of demonstrating that the nondiverse party has no "colorable cause of action" under state law.  *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, No. 06-cv-15752, 2007 WL 2332470, at *4 (E.D. Mich. Aug. 15, 2007).

When determining whether a party has been fraudulently joined, the Court "appl[ies] a test similar to, but more lenient than, the analysis applicable to a Rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).  Put differently, "[t]he standard requiring that the removing party show that the plaintiff cannot establish a claim against the allegedly fraudulently joined party, even after resolving all issues of law and fact in the plaintiff's favor, is *even more favorable* to the plaintiff than the standard for ruling on a motion to dismiss." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011). The Court may, when appropriate, "pierce the pleading" and "look to material outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias*, 695 F.3d at 433.  (internal citations omitted).  Finally, the Court must resolve "all disputed questions of fact and ambiguities in the controlling . . . state law in favor of the non-removing party." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

### 1. *Applicability of the Fraudulent-Joinder Doctrine to Plaintiffs*

Acknowledging that there is no controlling Sixth Circuit precedent on the issue of whether the fraudulent-joinder doctrine applies to fraudulently joined plaintiffs as well as defendants, the Magistrate Judge noted that district courts within the Sixth Circuit have come to different answers to this question. *See, e.g.*, *Myers Indus., Inc. v. Young*, 5:13-cv-1278, 2013 WL 4431250, at *4 (N.D. Ohio Aug. 16, 2013) (finding that "legal uncertainty" about whether to apply the doctrine to plaintiffs required remand because "the Court [was] bound to resolve all doubts about the propriety of removal in favor of remand"); *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) (noting that the primary purpose of the doctrine "is to ensure that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties," and this purpose is equally served in circumstances when

the plaintiff has sued non-diverse defendants against whom it has no viable claim and when the plaintiff has joined non-diverse plaintiffs who have no viable claims).

The Magistrate Judge concluded that the fraudulent-joinder doctrine was applicable to plaintiffs, reasoning that the rule that ambiguities in the removal context should be resolved in favor of remand was inapplicable to the question of whether a particular federal legal doctrine applies. (Doc. 23 at 5-6.) Rather, the thumb on the scale in favor of remand applies to the underlying factual issues and substantive state law at issue in the claims. (*Id.* at 6.) *See Walker*, 443 F. App'x at 952. The majority of courts to consider this issue, including the only federal appeals court to have addressed it, have held that the doctrine is applicable to both defendants and plaintiffs. *See, e.g.*, *Iowa Pub. Serv. Co. v. Med. Bow Coal Co.*, 556 F.2d 400, 404 (8th Cir. 1977); *Taco Bell*, 727 F. Supp. 2d at 607; *Johnson v. Armitage*, No. 4:10-cv-1808, 2011 WL 1838878, at *5 (N.D. Ohio May 13, 2011); *Eberspaecher*, 2007 WL 2332470, at *4; *Miller v. Home Depot, U.S.A., Inc.*, 199 F. Supp. 2d 502, 507-08 (W.D. La. 2001); *Sims v. Shell Oil Co.*, 130 F. Supp. 2d 788, 796 (S.D. Miss. 1999). This Court agrees that given that the "primary purpose of fraudulent joinder is to ensure that plaintiffs do not avoid diversity jurisdiction by pleading illegitimate claims involving non-diverse parties," this purpose is "fulfilled both where the plaintiff improperly sues non-diverse defendants against whom it has no viable claim and where the plaintiff joins additional non-diverse plaintiffs who have no viable claims." *Taco Bell*, 727 F. Supp. 2d at 607. There would be "no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs." *Grennell v. W. S. Life Ins., Co.*, 298 F. Supp. 2d 390, 396 (S.D. W.Va. 2004).

The Court **ADOPTS** this portion of the Magistrate Judge's Report and Recommendation and proceeds to examine whether Defendant has met its burden to show that the Holdings Company was fraudulently joined.

### 2.  Whether Fraudulent Joinder Applies to the Holdings Company

The Magistrate Judge next concluded that the Holdings Company was not fraudulently joined in the case because the factual allegations of the complaint show that The Holdings Company has at least a colorable trade-secret claim against Bloomberg.  (Doc. 23 at 10.)  The Court disagrees.  Bloomberg objected to this portion of the Magistrate Judge's Report and Recommendation, asserting that the *specific* allegations in the complaint and attached exhibits demonstrate that, contrary to the *general* allegations in the complaint, only Murray Energy has alleged a misappropriation of its trade secrets.  (Doc. 24 at 15.)

The Holdings Company is mentioned by name once in the complaint, in the first paragraph:  "Plaintiff Murray Energy Holdings Company is a privately-held Delaware corporation with its principal place of business in St. Clairsville, Ohio."[2]  (Doc. 3 at ¶ 1.)  All the specific factual allegations regarding the Lender Presentation and Bloomberg's publication of the information communicated therein pertain only to Murray Energy.  (*Id.* at ¶¶ 8-16.)  Later in the complaint, all allegations regarding the trade-secret, tortious-interference, civil-conspiracy, and declaratory-judgment claims refer to "Plaintiffs."  (*Id.* at ¶¶ 18-48.)  But it is clear on the face of the attached Confidentiality Agreement that the Agreement was between only Murray Energy and its investors.  Importantly, prospective investors were required to sign the following:

> I am being granted access to certain confidential financial information ("Confidential Information") of Murray Energy Corporation ("MEC").  I understand that the

---

[2] In their response to Defendant's objection to the Magistrate Judge's Report and Recommendation, Plaintiffs assert for the first time that Murray Energy is "a wholly owned subsidiary of Murray Holdings."  (Doc. 25 at 6 n.2.)

> Confidential Information is a valuable, special, and unique asset of MEC which provides MEC with a significant competitive advantage, and needs to be protected from improper disclosure.

(*Id.* at Ex. A.)  Plaintiffs also attached to the complaint an email from Murray Energy's Assistant General Counsel objecting to the publication of the information and a copy of Bloomberg's published article, neither of which mentions the Holdings Company or any financial information pertaining to it.  (*Id.* at Exs. B-C.)

The Magistrate Judge found that the reference to "Plaintiffs'" trade secrets in Count One of the Complaint, although not the references to Plaintiffs in the tortious-interference claim, were sufficient to state a colorable claim because the complaint "does not describe [the financial] information with sufficient specificity to make it clear that only financial information about [Murray Energy] is at issue here."  (Doc. 23 at 9.)  Even under the "more lenient" standard than that of a motion to dismiss, the Court disagrees.  *Casias*, 695 F.3d at 433.  The complaint's only mention of the Holdings Company is clearly insufficient on its face to state a claim for relief, and the references to "Plaintiffs" in the complaint are textbook examples of "legal conclusion[s] couched as [] factual allegation[s]."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Arrington v. Nationwide Mut. Fire Ins. Co.*, No. 3:14-cv-322, 2015 WL 852056, at *3 (W.D. Ky. Feb. 26, 2015) (holding that a statement that "[a]t all times relevant herein, [the fraudulently joined defendant] was a . . . claim representative handling the [plaintiffs'] insurance claim" was insufficient to state a claim that the defendant was "complicit in overcharging, participating in, [or] misleading the [plaintiffs'] in a fraudulent scheme").

Although the complaint does generally define the trade secret information as "certain confidential and proprietary business information, business plans, financial information and trade secrets regarding Plaintiffs, including, without limitation, their actual and projected adjusted

8

EBITDA, [capital expenditures], sales volume, cost of sales, price realizations, liquidity and/or cash reserves" (*id.* at ¶ 20), there are no specific *factual* allegations regarding the value the Holdings Company derived from keeping the alleged trade secrets confidential, or the reasonable efforts the Holdings Company took to keep the information confidential, the elements required to state a misappropriation-of-trade-secrets claim.[3]  Instead, the complaint sets forth mere legal conclusions as to "Plaintiffs'" trade-secret information, its independent economic value, and Plaintiffs' reasonable efforts to maintain its secrecy.  (*Id.* at ¶¶ 19-32.)  The Court is not required to "credit a complaint's conclusory statements without reference to its factual content."  *Iqbal*, 556 U.S. at 686.  Instead, the Court credits only the specific factual allegations of the complaint. As one court stated when finding the doctrine of fraudulent joinder applicable to a group of fraudulently joined defendants:

> [P]laintiffs in the instant action do not in large measure, single out the pharmacy defendants, nor do they describe with any degree of factual specificity the conduct giving rise to this suit.  To the contrary, pharmacy defendants merit but one reference in plaintiffs' entire thirty-four (34) page complaint.  Although plaintiffs' complaint commonly employs the generic term 'defendants', the context and nature of the individual allegations make clear that only the drug companies are targeted.

---

[3] In order to state a claim under the OUTSA, a plaintiff must show misappropriation of a trade secret, defined as :

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other who can obtain economic value from its disclosure or use.

> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D).  *See also* Section III(B)(1), *supra*.

*Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001).

Here, the face of the complaint shows no factual allegations sufficient to state a colorable claim under the OUTSA, and the exhibits attached to the complaint—in particular, the Confidentiality Agreement to which the Holdings Company is not a party—also reflect that *Murray Energy's* trade secrets were allegedly misappropriated. Although the Magistrate Judge is correct that Murray Energy's financial information could logically be considered a trade secret of the Holdings Company, there is not a single factual allegation in the complaint to that effect. On the contrary, there are no specific allegations that the Holdings Company "either own[ed] or ha[d] possession or a right to control the trade secrets." *RPM, Inc. v. Oatey Co.*, Nos. 3282-M, 3289-M, 2005 WL 663057, at *3 (Ohio Ct. App. Mar. 23, 2005) (citing *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (1999)). Tellingly, the complaint even expressly states that "[t]he Trade Secret Information was not made available to anyone (outside Murray Energy) at any time, except for those who received the Lender PowerPoint for purposes of the Lender Call and were parties to the Confidentiality Agreement." (Doc. 3 at ¶ 11.) The Court simply cannot credit conclusory statements that are unsupported by, or in some cases directly contradict, the complaint's specific factual allegations. The "lack of factual allegations regarding [the non-diverse party] provides no more than labels and conclusions insufficient to sustain viability of the legal claims." *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11-dp-20275, 2012 WL 1945603, at *5 (N.D. Ohio May 30, 2012). The Holdings Company has not stated a colorable claim for misappropriation of trade secrets.

The complaint similarly fails to state a colorable claim as to the Holdings Company for tortious interference, civil conspiracy, or declaratory judgment. As the Magistrate Judge made clear, because the Confidentiality Agreement does not identify the Holdings Company as a party

10

and there are no other allegations in the complaint such as a third-party beneficiary claim, the Holdings Company has no colorable claim for tortious interference with contract.  (*See* Doc. 23 at 9.)  Nor can it state a claim for civil conspiracy, because such a claim is dependent upon proof of an underlying unlawful act.  *See Stolle Mach. Co. v. RAM Precision Indus.*, 605 F. App'x 473, 486 (6th Cir. 2015).   Here the Court has found that the Holdings Company has failed to state a colorable claim for trade-secret misappropriation, the underlying unlawful act on which Plaintiffs rely.  Lastly, the Holdings Company cannot state a claim for a declaratory judgment without a colorable claim for the other causes of action.  *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 7254213, at *13 (S.D. Ohio Nov. 17, 2015).

Accordingly, the Court **REJECTS** this portion of the Magistrate Judge's Report and Recommendation and disregards the Holdings Company's residency for purposes of removal and jurisdiction.  The Motion to Remand is **DENIED**.

### III.    MOTION TO DISMISS

Having concluded that this Court's jurisdiction is proper over Murray Energy's claims, the Court proceeds to consider Defendant's Motion to Dismiss all four of Plaintiff's claims.

### A.  Standard of Review

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations."  *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005).  Thus, the Court must construe the complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported

11

by factual allegations. *Iqbal*, 556 U.S. at 678. Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Merits

#### 1. Trade Secrets Claim

To prevail on an OUTSA claim, a plaintiff must show "by a preponderance of the evidence: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 F. App'x 860, 861 (6th Cir. 2008). OUTSA defines a trade secret as:

> Information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Ohio Rev. Code § 1333.61(D). Defendant maintains that Plaintiffs have not alleged the existence of a trade secret because their complaint amounts to "legal conclusion[s] couched as []

12

factual allegation[s]." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  Specifically, Bloomberg asserts that Plaintiffs have alleged insufficient facts that could plausibly show that the financial information in question derives independent economic value from being kept secret or that the information was subject to reasonable efforts to maintain its secrecy.

The Ohio Supreme Court has adopted the following six factors for consideration in determining whether a plaintiff has shown the existence of a trade secret:

> (1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, *i.e.*, by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (1997).  The alleged trade secret information, as identified by Plaintiffs in their complaint, includes:  "certain confidential and proprietary business information, business plans, financial information and trade secrets regarding Plaintiffs, including, without limitation, their actual and projected adjusted EBITDA, [capital expenditure], production, sales volume, cost of sales, price realizations, liquidity and/or cash reserves."  (Doc. 3 at ¶ 20.)

An inquiry as to "whether information constitutes a trade secret is a highly fact-specific inquiry."  *Wellington Res. Grp. LLC v. Beck Energy Corp.*, No. 2:12-cv-104, 2013 WL 5325911, at *5 (S.D. Ohio Sept. 20, 2013); *see also Fred Siegel Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999) (noting that the question of whether information is a trade secret is a question for the trier of fact).  Nevertheless, "[c]onclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade

secret status." *Arnos v. MedCorp., Inc.*, No. L-09-1248, 2010 WL 1730139, at *3 (Ohio Ct.

App. Apr. 30, 2010) (citing *State ex rel. Besser v. Ohio State Univ.*, 732 N.E.2d 373, 381 (Ohio

2000) (per curiam)).

### a. Independent Economic Value

Defendant maintains that there are no factual allegations in the complaint to suggest that

the information in question here—Murray Energy's cash on hand at the end of June 2015 and its

forward-looking earnings projections—constitutes a trade secret and, therefore, Plaintiffs cannot

state a claim for trade-secret misappropriation. Specifically, Defendant argues that Plaintiffs

have not plausibly alleged that the information gained economic value from being kept secret or

that Murray Energy took reasonable efforts to protect its secrecy.

Courts have generally held that trade secret law does not protect "information that is

merely momentary or ephemeral" because it quickly becomes stale. *Plain Dealer*, 687 N.E.2d at

675. One court, applying Ohio law, characterized a trade secret as:

> a process or device for continuous use in the operation of the business. Generally, it
> relates to the production of goods, as for example, a machine or formula for the
> production of an article. It may, however, relate to the sale of goods or to other
> operations in the business, such as a code for determining discounts, rebates or other
> concessions in a price list of catalogue, or a list of specialized customers, or a method of
> bookkeeping or other office management.

*Apex Tool Grp., LLC v. DMTCO, LLC*, No. 3:13-CV-372, 2014 WL 6748344, at *12 (S.D. Ohio

Nov. 26, 2014). The "mere existence of a confidentiality agreement" does not, standing alone,

"support a trade secret claim for documents referred to in such an agreement." *Plain Dealer*, 687

N.E.2d at 673; *see also id.* ("[D]ocuments that pertain to draft agreements, negotiations, or other

events ephemeral in the conduct of the business are not trade secrets.").

This case is readily distinguishable from many of the other cases Plaintiffs cite where

courts have declined to dismiss trade-secret claims. In those cases, the plaintiffs alleged trade

14

secrets that were based on information about operations or processes, pricing methods, or business plans. *See, e.g.*, *Exal Corp. v. Roeslein & Assocs.*, No. 4:12-cv-1830, 2013 WL 6843022, at *3 (N.D. Ohio Dec. 27, 2013) (declining to dismiss a trade-secret claim based on financial projections and cost structure information about a new building project, the identity and method of use of certain raw materials in construction projects, and information about the operating procedures of the plaintiff's equipment); *LeJeune v. Coin Acceptors, Inc.*, 849 A.2d 451, 464 (Md. Ct. App. 2004) (upholding a grant of preliminary injunction for misappropriation of trade secrets, including pricing and cost information, a strategic plan, budgeting software, and detailed specifications for two models of currency acceptance machines). *See also Wellington Res. Grp.*, 2013 WL 5325911, at *5  (finding that allegations regarding the misappropriation of confidential proprietary information relating to business opportunities, including a planned sale to another company, stated a trade-secrets claim under the OUTSA); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F. Supp. 2d 722, 729 (N.D. Ohio 1999) (holding that allegations that a confidential technology used in a plaintiff's bending and tempering system was a trade secret were sufficient to survive a motion to dismiss, but granting the motion to dismiss the trade-secret claim on another ground).[4]

The best case in support of Plaintiffs' position may be *Rain CII Carbon, LLC v. Kurczy*, Case No. 12-2014, 2012 WL 3577534 (E.D. La. Aug. 20, 2012), which was brought against a media company for publication of similar financial information to that at issue here.  There, the

---

[4] The parties spill a fair amount of ink debating whether Murray Energy's status as a private company weighs in favor of finding that this financial information could plausibly be considered a trade secret that derives independent economic value from not being known to those who could benefit from its use, given that the SEC requires disclosure of this exact type of financial information for publicly traded companies.  The Court agrees that even though Murray Energy is a private company, the fact that this type of information is routinely disclosed by publicly traded companies undermines Plaintiffs' arguments.  After all, it would make little sense for the SEC to require regular disclosure of information that would constitute trade secrets in a different context.

court concluded that the financial information that the defendant published "arguably" constituted trade secrets but ultimately denied a preliminary-injunction motion because it concluded that the injunction would constitute a prior restraint on speech.  But the Court declines to adopt the analysis of the *Kurczy* court with regard to whether the gross profit margins of the plaintiff there were a trade secret, given that the opinion primarily concerns whether the requested injunction was an unconstitutional prior restraint.  *See* 2012 WL 3577534, at *3-6. Moreover, unlike in *Kurczy*, where the court found that the plaintiff had presented evidence that its gross margins were a trade secret, and that that financial information derived economic value from not generally being known to the public,[5] Plaintiffs' complaint here consists virtually entirely of "legal conclusions[s] couched as . . . factual allegations[s]." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  (*See* Doc. 3 at ¶¶ 22-26.)  Plaintiffs fail to provide any factual specificity regarding the "confidential and proprietary business information, business plans, financial information, and trade secrets, including, without limitation, their actual and projected adjusted EBITDA, capex, production, sales volume, cost of sales, price realizations, liquidity, and/or cash reserves." (*Id.* at ¶ 20.)  Instead, they merely recite the elements of a cause of action under the OUTSA, which does not suffice to state a claim for relief.  *See Twombly*, 550 U.S. at 555.  Plaintiffs make no factual allegations whatsoever relating to the majority of the *Plain Dealer* factors, such as who has access to the information within the company, what specific benefits inure to the company by keeping the information

---

[5] The *Kurczy* court considered that matter at the preliminary-injunction stage and therefore held an evidentiary hearing in which the parties presented evidence in order for the court to determine the parties' likelihood of success on the merits.  *Id.* at *2.  Although the procedural posture here is different because the Court must take Plaintiffs' factual allegations as true at the motion-to-dismiss stage, *Total Benefits Planning Agency*, 552 F.3d at 434, the Court concludes that Plaintiffs' claims fail here not because they have failed to introduce evidence that the alleged trade secrets have independent economic value, but because they do not plead facts to show that the trade secrets *plausibly* have independent economic value.  *See Twombly*, 550 U.S. at 556.

confidential, and how much effort or money is expended in keeping the information secret or

would be expended by competitors who attempted to duplicate the information.  *See Plain*

*Dealer*, 687 N.E.2d at 672.

As to the first *Plain Dealer* factor—the extent to which the information is known outside

the business—Defendant argues that the financial information in question has no independent

economic value because Plaintiffs have disclosed, and indeed routinely allow the disclosure of,

this information.  The Confidentiality Agreement that purportedly reveals this disclosure reads,

in relevant part, as follows:

> The Confidential Information is confidential and I agree that I will use such information
> solely for the purpose of administrating and evaluating my employer's investment or
> potential investment in [Murray Energy].  I agree to keep such Confidential Information
> strictly confidential, and not disclose such information to any other person or third party
> in any manner, except to the extent that such disclosure of such information:  1) has been
> previously consented to in writing by [Murray Energy]; 2) is required by applicable law,
> regulatory, or legal process; or 3) is made to the directors, officers, employees, affiliates,
> financing parties or advisors of my employer and to any representatives of such advisors .
> . . solely for the purpose of administrating and evaluating investments in [Murray
> Energy].

(Doc. 3, Ex. A.)

The Court agrees that Murray Energy cannot plausibly allege that this financial

information allows it to gain a competitive advantage when, in fact, it routinely discloses the

information to potential lenders and investors.  Murray Energy has failed to allege facts to show

that the information "derives independent economic value . . . from not being generally known

to, and not being readily ascertainable by proper means by, other persons who can obtain

economic value from its disclosure or use."  Ohio Rev. Code § 1333.61(D)(1).  In the alternative,

the Court also finds that Plaintiffs' OUTSA claim fails to allege efforts to maintain the secrecy of

the trade secrets and also cannot survive a motion to dismiss on that ground.

*b. Efforts to Maintain Secrecy*

The Sixth Circuit has stated that "except where the evidentiary showing of reasonable efforts [to maintain secrecy] could not conceivably support a judgment in favor of the plaintiff, the reasonableness of the efforts is a question for the trier of fact." *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 303 (6th Cir. 2008). Plaintiffs assert that their allegations that they required participants on the Lender Call to sign a Confidentiality Agreement, uploaded the Lender PowerPoint to a secure website, and designated the Lender Presentation as "confidential" are sufficient at the motion-to-dismiss stage to show reasonable efforts to maintain the secrecy of their financial information. (Doc. 18 at 12.)

Defendant counters that these alleged efforts constitute an insufficient showing of the second part of the test to show the existence of a trade secret. Defendant argues that because the Agreement explicitly allows disclosure to prospective investors, who would not be required to sign a confidentiality agreement, Plaintiffs have not taken reasonable steps to protect this information. The Court agrees. As another court, applying Ohio law, has found, "disclosure . . . absent a confidential agreement or understanding, will destroy any protection of that information as a trade secret." *Thermodyn Corp. v. 3M Co.*, 593 F. Supp. 2d 972, 986 (N.D. Ohio 2008) (citing *R&R Plastics, Inc. v. F.E. Meyers Co.*, 637 N.E.2d 332, 341 (Ohio Ct. App. 1993)). The routine disclosure of this information demonstrates that it cannot satisfy the *Plain Dealer* factors because the information was widely known outside the company, Murray Energy did not take steps to ensure its secrecy, and it would not take significant time and expense to acquire and duplicate this information. *See Plain Dealer*, 687 N.E.2d at 672.

Murray Energy's allegations do not state a claim for a violation of the OUTSA and, therefore, the Court **GRANTS** Defendant's motion to dismiss the trade-secrets claim. Although

18

this claim will be dismissed for failure to allege the existence of a trade secret, the Court is also mindful—especially since neither party has cited to a successful trade-secret action that arose out of the media's disclosure of supposedly confidential information—that the First Amendment might provide an alternate basis for dismissal of this claim, because the Supreme Court has held that when a media organization "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 103 (1979).[6]

### 2. *Tortious-Interference and Civil-Conspiracy Claims*

Defendant argues that both the tortious-interference and civil-conspiracy claims are preempted by OUTSA, which states that the Act "displace[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." Ohio Rev. Code 1333.67(A). Courts have generally found tort claims to be preempted when they "are no more than a restatement of the same operative facts that formed the basis of the plaintiff's statutory claims for trade secret misappropriation." *Stolle Mach. Co.*, 605 F. App'x at 485 (internal quotation marks and citation omitted).[7]

---

[6] The tortious-interference and civil-conspiracy claims also most likely fail to withstand First Amendment scrutiny. The Court, however, will dismiss those claims on alternate grounds, as detailed in Section III(B)(2).

[7] The Ohio Supreme Court has not addressed the scope of the OUTSA preemption clause. When "state law is unsettled, as in this case, [the Court] must anticipate how the state's supreme court would rule on the issue of state law." *Melson v. Prime Ins. Syndicate, Inc.*, 429 F.3d 633, 636 (6th Cir. 2005). The majority view among jurisdictions that, like Ohio, have adopted the Uniform Trade Secrets Act ("UTSA") is that all common law claims that rely upon the same factual matter as a claim under the UTSA are preempted. *See Office Depot, Inc. v. Impact Office Prods., LLC*, 821 F. Supp. 2d 912, 918-19 (N.D. Ohio 2011). Ohio intermediate appellate courts have also adopted this standard. *See id.* at 919. The Court thus presumes that the Ohio Supreme Court would adopt this standard.

Murray Energy attempts to distinguish these common law tort claims from the OUTSA claim, contending that these claims focus on "*how the misappropriation occurred*" while the OUTSA claims center on "*what Bloomberg did* with its misappropriation."  (Doc. 18 at 12.) Plaintiffs rely on *Miami Valley Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925 (S.D. Ohio 2012), but that case provides no help to them.  There, the court found that a claim for conversion was preempted by the OUTSA because that claim rested "entirely on the same operative facts" as the trade-secret claim, that is, that the defendant, a corporation that coordinated paramedical examinations for the insurance industry, wrongfully took the list of names, addresses, and phone numbers of the plaintiffs' business contacts, which the plaintiffs, licensed agents who conducted the medical examination for individual insurance applicants, alleged to be trade secrets.  *Id.* at 940-41.  The court denied the motion to dismiss the tortious-interference claims, however, finding that those claims were not preempted because they centered on an allegation that the defendant "purposely interfered" with the plaintiffs' business relationships with various insurance agencies "by hindering and/or preventing Plaintiffs from doing business with these relations."  *Id.* at 941.  Specifically, the plaintiffs alleged that the defendant required independent agent examiners, nurses, and physicians to use a central scheduling office and dictated where, when, and how they completed the contracted paramedical examinations, which prevented individual insurance companies from being able to schedule paramedical exams directly with the plaintiffs.  *Id.*  Although the claims were related, the allegations regarding the interference with contractual relations through the mandated central scheduling office "allege far more than the wrongful use of clients' contact information," and were thus not preempted by the OUTSA.  *Id.*

20

Here, Plaintiffs' complaint asserts that Bloomberg "intentionally and unjustifiably induced the breaches of the Confidentiality Agreement by its sources and/or induced its sources to disclose the Trade Secret Information with knowledge that such disclosure would violate the terms of the Confidentiality Agreement."  (Doc. 3 at ¶ 38.)  In essence, Plaintiffs' tortious-interference claim restates their misappropriation-of-trade-secrets claim, and Plaintiffs' attempt to distinguish the "what" from the "how" here misses the point because Plaintiffs allege the exact same facts to support both claims—that "what" Defendant did was publish Plaintiffs' financial information that it allegedly acquired improperly and "how" it did it was improperly to acquire the information so it could publish it.  The other cases Plaintiffs cite do not help their argument because the plaintiffs in those cases pleaded specific facts to support their arguments that an "independent factual basis" separated their other claims from the OUTSA claims.  *See e.g.*, *Office Depot, Inc. v. Impact Office Prods.*, 821 F. Supp. 2d 912, 921-22 (N.D. Ohio 2011) (noting that the existence of a non-compete provision provided an "independent factual basis" from the OUTSA claim).

As to the civil-conspiracy claim, the Sixth Circuit has noted, in applying Ohio law to find a civil-conspiracy claim preempted by OUTSA, that:

> Even though proof of conspiracy requires proving additional facts—a malicious combination of two or more persons causing injury—beyond the underlying unlawful act, the conspiracy claim is dependent on proof of the underlying act—here, misappropriation of trade secrets.  [The plaintiff's] conspiracy claim similarly restates the operative facts that would establish [the plaintiff's] claim for misappropriation of trade secrets.

*Stolle Mach. Co.*, 605 F. App'x at 486 (internal citation omitted).

Plaintiffs' complaint alleges that Defendant "knowingly, voluntarily and maliciously combined and conspired with one or more of its sources to enable the breaches of the Confidentiality Agreement for the unlawful purpose of acquiring the Trade Secret Information

for publication in violation of Ohio law." (Doc. 3 at ¶ 43.) The underlying unlawful act, as alleged in the complaint, was the misappropriation of trade secrets. (*Id.* at ¶ 44.) Accordingly, "[b]y its very allegations, the civil conspiracy claim is specifically linked to the alleged theft of trade secrets, and necessarily rises or falls based on whether the defendant is found to have misappropriated a trade secret." *ProductiveMD, LLC v. 4UMD, LLC*, 821 F. Supp. 2d 955, 967 (M.D. Tenn. 2011) (alterations, citation, and internal quotation marks omitted). Therefore, the civil-conspiracy claim is preempted by the OUTSA.

As a last-ditch effort to save their common law tort claims, Plaintiffs contend that they are "clearly permitted to plead alternative or even inconsistent claims without being subject to a motion to dismiss." *Lunkenheimer Co. v. Pentair Flow Control Pacific PTY Ltd.*, No. 1:11-cv-824, 2014 WL 4450034, at *5 (S.D. Ohio Sept. 10, 2014). But courts have rejected this argument as applied to OUTSA claims. *See Rogers Indus. Prods. Inc. v. HF Rubber Mach., Inc.*, 936 N.E.2d 122, 130 (Ohio 2010) ("This language was intended to prevent inconsistent theories of relief for the same underlying harm and has been interpreted to bar claims that are based solely on allegations of misappropriation of trade secrets or other confidential information."); *Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 940. It would be incongruent to hold that these claims are preempted yet allow them to be pleaded in the alternative. *Dow Corning Corp. v. Jie Xiao*, another case Plaintiffs cite, is also inapplicable because there the plaintiffs sought a remedy for the disclosure of information protected by a confidentiality agreement that did *not* consist of trade secrets, and Plaintiffs seek no such other remedy here. No. 11-10008-BC, 2011 WL 2015517, at *14 (E.D. Mich. May 20, 2011). On the contrary, it is apparent on the face of the complaint that Plaintiffs do not seek remedies for the disclosure of other non-trade secret information. (*See* Doc. 3 at ¶¶ 38, 41, 43-44.)

The Court **GRANTS** Defendant's Motion to Dismiss the tortious-interference and civil-conspiracy claims.

### 3.  Declaratory Judgment Claim

Without a colorable claim on any of the other causes of action, Plaintiffs have no basis to seek a declaratory judgment.  *See Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) ("[The Declaratory Judgment Act] does not create an independent cause of action"); *Marshall v. Ohio Univ.*, No. 2:15-cv-775, 2015 WL 7254213, at *13 (S.D. Ohio Nov. 17, 2015).

In the alternative, however, the Court finds that the declaratory judgment claim must be dismissed because it operates as an unconstitutional prior restraint on speech.  Plaintiffs seek a declaratory judgment that "publication of any other information from the Lender Presentation by Bloomberg will constitute an additional violation of OUTSA and will entitle Plaintiffs to further relief as provided by law."  (Doc. 3 at ¶ 48.)  Defendant argues that a declaratory judgment would constitute an unconstitutional prior restraint on its speech.  Alternatively, Bloomberg contends that this claim fails to present a justiciable controversy as required by the Ohio Declaratory Judgment Act, Ohio Revised Code § 2721.02.

A prior restraint is a law "*forbidding* certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original).  Laws that "impose a prior restraint on free speech have been disfavored by the courts as tantamount to censorship and thought control."  *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001) (citing *Near v. Minnesota*, 283 U.S. 697, 713 (1931)).  A party who seeks a prior restraint "carries a heavy burden of showing justification for the imposition of such a restraint."  *McGlone v. Bell*, 681

F.3d 718, 733 (6th Cir. 2012) (quoting *Cnty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 485 (6th Cir. 2002)).

Plaintiffs try to characterize their declaratory-judgment claim as one that imposes damages for past speech, not a restraint on future expressive activity.  (Doc. 18 at 18.)  Because they do not seek an order forbidding the publication of material from the August Lender Presentation, they contend that a declaratory judgment would not be a prior restraint because Defendant would be free to publish such material and then pay damages for violating the OUTSA.  (*Id.* at 18-19.)  This argument strains the Court's credulity.  First, the prior-restraint doctrine does not apply only to injunctions but to all "administrative and judicial orders that block expressive activity before it can occur."  *Polaris Amphitheater Concerts*, 267 F.3d at 506. Second, although a declaratory judgment from this Court would not technically be an injunction, by making the further publication of information unlawful, it would operate as such.  And any past conduct of Defendant would not justify the imposition of such a declaration that future publication would violate the law when, as here, there are no extraordinary reasons, such as national security, to suppress such publication.  *See Near*, 283 U.S. at 716 (noting that a prior restraint may be imposed in an extraordinary situation such as to prevent "publication of the sailing dates of transports or the number and location of troops.").  Instead, this is a run-of-the-mill case of unconstitutional prior restraint, illustrating that "where a law sets out primarily to arrest the future speech of a defendant as a result of his past conduct, it operates like a censor, and as such violates First Amendment protections against prior restraint of speech."  *Polaris Amphitheater Concerts*, 267 F.3d at 507.

Moreover, the Sixth Circuit has held that allegedly improper conduct in obtaining the information is insufficient to justify imposing a prior restraint.  *Proctor & Gamble Co. v.*

*Bankers Trust Co.*, 78 F.3d 219, 225 (6th Cir. 1996).  Only when "publication [would] threaten an interest more fundamental than the First Amendment itself" is such a restraint justified.  *Id.* at 226-27.  Here, Plaintiffs' "interest in protecting their vanity or their commercial self-interest simply does not qualify as grounds for imposing a prior restraint."  *Id.* at 225; *see also Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 753 (S.D. Ohio 1999) ("In the absence of a confidentiality agreement or fiduciary duty between the parties, [the plaintiff's] commercial interest in its trade secrets and [the defendant's] alleged improper conduct in obtaining the trade secrets are not grounds for issuing a prior restraint.").

The Court **GRANTS** Defendant's Motion to Dismiss the declaratory-judgment claim.

## IV.    CONCLUSION

The Court hereby **ADOPTS in part** and **REJECTS in part** the Report and Recommendation (Doc. 23.)  Plaintiffs' motion to remand (Doc. 15) is **DENIED**.  Defendant's motion to dismiss (Doc. 17) is **GRANTED**.  This case is **DISMISSED**.  The Clerk is directed to enter Judgment for Defendant.

**IT IS SO ORDERED.**


                             ___s/ Algenon L. Marbley_____
                             **ALGENON L. MARBLEY**
                             **UNITED STATES DISTRICT JUDGE**

**DATED:  June 17, 2016**